FILED
2017 May-09  AM 10:13
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **DONNA CAMPBELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **KBRWYLE TECHNOLOGY** | ) |
| **SOLUTIONS, LLC,** | ) |
| **FREDRAN PATTON,** | ) |
| | )   **JURY TRIAL DEMANDED** |
| **Defendants.** | ) |

## COMPLAINT

**COMES NOW** Campbell, Donna Campbell (hereinafter "Campbell"), and for her complaint against the Defendants, KBRwyle Technology Solutions, LLC*[1], among others, states as follows.

Plaintiff Campbell seeks legal redress for deprivation of her federally-protected rights under the following statutes:

1.     The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, (hereinafter the "Age Discrimination in Employment Act" or "ADEA").

---

[1] KBR, Inc., as described more thoroughly in the Statement of Facts section, purchased HTSI from Honeywell International in September 2016, HTSI becoming KBRwyle Techonology Solutions, LLC. The same employees and supervisors remained at the same facility under new ownership. For ease of reading, 'KBRwyle' will be used throughout this complaint for claims and relevant events occurring before and after the September 2016 purchase.

1

2.      The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, (hereinafter the "Americans with Disabilities Act" or "ADA").

3.      The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, (hereinafter the "Family and Medical Leave Act" or "FMLA").

## JURISDICTION & VENUE

4.      Jurisdiction is conferred upon this Court by:

a)      § 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b),

b)      29 U.S.C. § 2601 *et seq.*, of the Family and Medical Leave Act,

c)      42 U.S.C. § 12117 of the Americans with Disabilities Act, incorporating the protections of 42 U.S.C. §§ 2000e-4, 2000e-6, 2000e-8, and 2000e-9.

d)      28 U.S.C. § 1331, this action arising under the laws of the United States,

e)      28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce,

f)       28 U.S.C. §§2201 and 2202, providing for further relief.;

5.      Venue in the Northern District of Alabama, Eastern Division, is proper pursuant to 28 U.S.C. § 1391(b), as the action is brought within the District where a substantial part of the unlawful employment practices were committed.

## PARTIES & STATUTORY QUALIFICATIONS

**A.      Plaintiff: Donna Campbell**

6.      Pamela Campbell (hereinafter 'Campbell'), is a person over the age of nineteen (19) years, a resident of the State of Alabama, a present resident of Calhoun County, and a former employee of KBRwyle.

7.      During all times relevant to this Complaint, Campbell was a full-time employee of KBRwyle/HTSI and was subject to the full protection of the FMLA, ADA, ADEA and Title VII.

**B.      Defendants:**

1.      KBRwyle Technology Solutions, LLC. (hereinafter, KBR"), is a foreign limited liability company, incorporated in Delaware, with a principal address in New Jersey, and registered to do business in Alabama. KBRwyle is a wholly owned subsidiary of KBR, Inc., (hereinafter distinguished by "KBR, Inc."). KBRwyle acquired its current title of "KBRwyle Technology Solutions, LLC", following KBR's July 2016 purchase of Wyle, Inc., a government services company.

2.      For most of the period relevant to this complaint Campbell's employer was Honeywell Technology Solutions, Inc. (hereinafter "HTSI").

3.      HTSI was a unit of Honeywell International, Inc until mid-September 2016 when HTSI was acquired in its entirety by KBR, Inc.

4.     In mid-September 2016, KBR, Inc. created KBRwyle Technology Solutions, LLC to provide a subsidiary for absorbing HTSI into the KBR, Inc. network.

5.     KBR maintains a registered address with C T Corporation System at 2 North Jackson Street, Suite 605 in Montgomery, Alabama 36104.

6.     Defendant Fredran Patton served as a supervisor, i.e. Logistics Supervisor, over Campbell between February 2016 and February 2017, both with HTSI and KBRwyle.

7.     KBRwyle's discriminatory acts were authorized, ordered, or done by KBwyle's officers, agents, employees, or representatives while they were actively engaged in the management of KBRwyle's business.

8.     Defendant company KBRwyle operates an enterprise engaged in or affecting interstate commerce for the purposes of the ADEA, ADA, and FMLA: specifically, the company provides refitting, overhaul, maintenance, and updating engines on the M1-Abrams main battle tank for the United States Military at 7 Frankford Ave, Building 136e, Anniston, Alabama 36201

9.     At all times pertinent to the matters alleged herein, KBRwyle has employed fifteen (15) or more employees for each working day in each of at least twenty calendar weeks in the year preceding this complaint.

4

10.     KBRwyle engages in an industry affecting commerce, by specifically carrying on any activity, business, or industry among the several States.

11.     Upon information and belief, the defendant has gross revenues which exceed $500,000.00 per year.

## FAMILY MEDICAL LEAVE ACT QUALIFICATION

12.     The KBRwyle defendants are covered entities under the Family and Medical Leave Act, 28 U.S.C. §1331 and 29 U.S.C. 2617(a)(2), the Age Discrimination in Employment Act, 29 U.S.C. § 630(b), and the Americans with Disabilities Act, 42 U.S.C. §12111, as KBR employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in each of the previous three calendar years prior to the events at issue in this action.

13.     During all times relevant to this Complaint, Campbell was an eligible employee under the Family and Medical Leave Act, as she had been employed by defendants for more than twelve (12) months prior to the time the FMLA leave commenced, she had performed more than 1,250 hours of service for the defendant during that twelve (12) month period.

14.     During all times relevant to this Complaint, Campbell was not compensated among the top 10% of employees at KBRwyle. Thus, she was subject to the full protection of the FMLA.

## AMERICANS WITH DISABILITIES ACT QUALIFICATIONS

5

15.     The KBRwyle defendants are employers, and therefore covered entities, within the meaning of the Americans with Disabilities Act ("ADA"), under 42 U.S.C. § 12111 (5) (A)

## ADMINISTRATIVE PREREQUISITES

16.     On August 29, 2016, Campbell filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC"), alleging ADA and ADEA violations within one hundred eighty (180) days following KBRwyle's, then 'HTSI''s, most recent discriminatory act.

17.     On February 3, 2017, the EEOC issued Campbell a Notice of Right to Sue, which she actually received on February 6, 2017.

18.     In its notice, the EEOC also made a finding that the evidence did not allow them to make any conclusions for or against KBRwyle.

19.     Campbell initiated this action within ninety (90) days of receipt of her Notice of Right to Sue from the EEOC, controlling for the weekend due date.

20.     On information and belief, Campbell is under no agreement to arbitrate or submit to any alternative dispute resolution; KBRwyle introduced an arbitration agreement program of some sort *after* Campbell's employment ended.

21.     Therefore, Campbell's administrative avenues for remedy in this matter have been exhausted, for each claim that statutorily required administrative

exhaustion, and all other conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

### I.   General Facts

22.   Donna Campbell has been treated for clinical anxiety and depression, including chronic panic attacks, since approximately 2002.

23.   Campbell has been open about this disability to her co-workers and supervisors during the tenure of her employment.

24.   Prior to its purchase by KBR, Inc., HTSI hired Campbell on February 15, 2008.

25.   HTSI assigned Campbell to the positon of Warehouse Order Filler, a division of Honeywell Technician I Product Support positions.

26.   HTSI assigned Campbell to work in the 'Total InteGrated Engine Revitalization' (hereinafter, 'TIGER') department, which was tasked with resetting and/or providing repairs to the AGT1500 gas turbine engines on M1 Abrams battle tanks for the United States Armed Forces.

27.   TIGER was located at 7 Frankford Avenue, Building 136E at the Anniston Alabama Army Depot.

28.    Campbell's duties required performance of inventory and warehouse activities necessary to meet HTSI cost, quality, and delivery goals for TIGER during the warehousing, kitting, and delivery processes.

29.    Between February 2016 and February 2017, Campbell's immediate supervisor was Fredran Patton (hereinafter 'Patton'), a Logistics Supervisor.

30.    It was during this period, between approximately February 2016, and February 2017 that the relevant discriminatory and retaliatory by the Defendants took place.

31.    HTSI employed fifteen permanent employees, Campbell, and between two and five temporary employees in the Anniston TIGER department.

32.    Shortly after HTSI assigned Patton to the TIGER project in February 2016, Patton started offering computer training programs.

33.    At daily meetings, Patton stated what training would be offered and that everyone would be getting laptops to use for training on company time.

34.    This training was to be outside the formal Honeywell Learning Management System training process offered to all employees who had computers.

35.    These trainings included proficiency training in basic computer use, calendar use, Microsoft Excel, data entry, Electronic Maintenance Inspection Data Analysis System (EMIDAS), count tickets, and receiving.

36.    Completing this training would give TIGER workers an effective opportunity to transform their formerly paper and hand-writing-based skills into electronic proficiency, which in turn would make them more valuable to HTSI, and among other metrics, help them to stay employed with the company.

37.    Knowing her value to the company would be tied to it, Campbell was highly eager to take part in Patton's in-person training.

38.    Though Campbell had a laptop, she would not be able to effectively use certain electronic training programs on it without some of the computer skills offered in Patton's classes.

39.    The first session was set for March 9, 2016, and approximately nineteen (19) additional sessions were offered between then and June 12, 2016.

40.    Patton represented to the TIGER team that employees need only inform Patton of their interest and they would be permitted to attend his training on company time.

41.    Contrary to his denials in prerequisite EEOC proceedings, Campbell repeatedly informed Patton of her interest, repeatedly tried to sign up for training sessions, and was repeatedly turned away.

42.    Contrary to his denials in prerequisite EEOC proceedings, Patton repeatedly send Campbell back to her work station each and every time she tried to enroll.

43.    Patton repeatedly and summarily told Campbell that no one could fill in for her at her work station.

44.    TIGER workers, including Campbell, are cross trained and frequently fill in for one another for periods of training or other need.

45.    Campbell observed repeatedly as other workers made the same requests of Patton and were immediately accommodated for training, which did have a low turnout.

46.    Campbell, computer proficient enough to check her emails, also observed as certain other members of the TIGER team received personal emails from management inviting them to train, while she received none.

47.    Between February 2016 and June 2016, Campbell's panic attacks, depression, and anxiety became more severe.

48.    During this period, Patton had taken a special interest in a newer employee in her twenties named Nina Hall who did receive accommodation and emails for far more training than any other TIGER team member.

49.    During this period, Patton would describe Hall as "in charge" when he was not present, treating her outside of her job description as a supervisor, including allowing her to disperse duties and administer oral discipline.

50.    Campbell's panic attacks increased as it became apparent that her supervisor was deliberately targeting a much younger female employee for the

digital training necessary to stay employed long term, while denying that same training to the both older and disabled Campbell.

51.     Patton had even told Campbell that she needed the classes specific to her station and job description, which she then requested, yet only Nina Hall received such training at length.

52.     Upon speaking with her treating physician, Campbell was advised to take FMLA time on either an intermittent or extended basis.

53.     Campbell applied to her employer for FMLA and was approved for intermittent leave, largely to handle panic attacks, on April 25, 2016.

54.     Between April 25, 2016 and June 12, 2016, Campbell made a request to take intermittent FMLA time to Sharon Garshak in Human Resources, but was informed that she would have to give twenty-four (24) hour notice prior to taking leave.

55.     Campbell framed the request as FMLA, and knew Garshak had been informed of the approval, but her protests were met with the same twenty-four (24) hour requirement.

56.     Knowing that she could not give twenty-four (24) hours notice of a panic attack, Campbell did not make any more requests.

57.     This requirement was directly contrary to the company's stated FMLA policy, but in concordance with its customary practice with respect to non-FMLA leave like vacation.

58.     Campbell was approved for full-time leave which began on June 12, 2016 lasted until October 24, 2016, and was followed by approved ADA medical leave until January 3, 2017.

59.     Based on the allegations above, Campbell filed a charge of discrimination with the EEOC, on grounds of disability and age discrimination, but continued to stay on leave.

60.     During the same hiatus, HTSI became KBRwyle.

61.     Campbell visited her treating physician, Dr. Patrick C. Tapia, MD , frequently, which allowed him to complete her first reasonable accommodation request letter on November 30, 2016.

62.     His letter reviewed her full job description and limited her, based on medication use, from: operating forklifts and 'easy go's', a small part of her work, limiting overtime, and controlling her interactions with Patton.

63.     Tapia further noted that Campbell was mentally intact enough to complete any data management software training. Her responsibilities with receiving, counting, stocking, kitting, shipping, packing, computer work, and data management were kept the same.

64.     Based on subsequent visits, a second notice was created on December 7, 2016.

65.     Campbell returned to work on January 3, 2017, and was slated to follow up with Tapia on March 1, 2017.

66.     Upon return, Patton assigned Campbell to 'temporary light duty' through auditing work, a small fraction of both her previous work and her reasonable accommodation request, on the grounds of *following* her reasonable accommodation request.

67.     Campbell repeatedly pointed out that the accommodation request did not restrict any of the work she had been doing, save the small amount of vehicle-based work and overtime.

68.     Despite this protest, Campbell was not permitted to do warehousing, delivering, kitting, or counting, all allowed explicitly in her reasonable accommodation request as stated by her doctor.

69.     There existed no overstaffing problem or other explanation other than that KBYwyle had chosen not to follow the reasonable accommodation request.

70.     Tapia was able to give KBRwyle a follow up amended reasonable accommodation request on January 20, 2017, requesting five to fifteen minute breaks throughout the day to collect her thoughts alone in the bathroom.

13

71.     On January 10, 2017, KBRwyle furnished Campbell's final year-end performance assessment and stated that, "[Campbell] needs to become more aware of computer functions." This assessment did not appear to control for Campbell's protected FMLA and ADA absence in any way.

72.     Out of four goal metrics, KBRwyle ranked Campbell as below expectations, using a novel point system unused in the TIGER department prior to that year.

73.     On January 17, 2017, TIGER co-worker Rebecca Rhodes inquired with Patton if she could train anyone as she had done so the previous year under Patton's program.

74.     Patton recommended a part-time employee but Rhodes rejected the non-KBRwyle employee due to the proprietary sensitivity of the training information.

75.     Rhodes then recommended Donna Campbell, due to her absence and tenure, but Patton again said she was not to be trained.

76.     On February 2, 2017, Patton announced his resignation and ceased work with KBRwyle on February 8, 2017.

77.     EEOC released their right to sue letter for Campbell on February 3, 2017, and it was received on February 6, 2017.

78.     On February 8, 2017, Lauren Pierce in Human Resources terminated Campbell, informing her that KBRwyle could no longer reasonably accommodate her disability, stating that her last day of work would be February 10, 2017, directing her to turn in her badge immediately, and offering her a severance package.

79.     Therefore, Campbell was barred from returning to work on February 10, 2017, because at KBRwyle's direction, she had no common access badge required to enter the Depot.

80.     Based on that failure to return, KBRwyle stated that Campbell voluntarily left work.

81.     In sum, KBRwyle/HTSI, by and through its supervisory agents described with particularity throughout this Complaint, deliberately travelled outside of the exhaustively clear reasonable accommodation requests provided by Campbell's primary treatment provider and forced Campbell into a less-valuable, less-efficient, less-productive position, all under the pretext of following her reasonable accommodation request. This self-imposed onerous burden was a thinly concealed pretext to fire her, which they did immediately upon the release of her EEOC right to sue letter.

82.     Campbell believes these actions were pretextual means to force her to keep the same position and skill set, so as to stymie her advancement and allow a

particular younger female of interest to Patton without disabilities to usurp her position.

83.    Because Campbell fell under numerous protected classes, she anticipates the discovery process to reveal the most appropriate choice of remedy. Therefore, all claims for damages below are stated in the alternative, consistent with FRCP Rules 8(d)(2) and (3), to the extent such claims are mutually exclusive under applicable law.

## COUNT ONE-
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
### (Interference- 29 U.S.C. §2615(a))

84.    Campbell re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

85.    Campbell was an eligible employee under 29 CFR § 825.110. She was eligible under 29 CFR § 825.112(a)(3), due to her own serious health condition, as defined under 29 CFR § 825.113: ongoing severe major depressive disorder, anxiety disorder, and panic attacks.

86.    Campbell's request for leave put the defendants on proper notice that Campbell intended to exercise her rights under the FMLA to take intermittent leave for her anxiety and unpredictable panic attacks.

87.     Defendant KBR Wyle violated the FMLA by requiring her to give twenty four hours notice prior to taking time off and by using her FMLA time against her in creating its yearly performance evaluation.

88.     As a result of the defendants' interference, which was an intentional and willful violation of the FMLA, Campbell medical condition was allowed to worsen without the relief guaranteed under the FMLA causing emotional distress, inconvenience, humiliation, shame, mental anguish, loss of enjoyment of life, pecuniary losses, included lost wages, and non-pecuniary damages.

WHEREFORE, Campbell requests this Court to enter judgment in favor of Campbell and against the defendants for:

A.     An order reinstating Campbell to her former position, or in lieu of reinstatement, front pay;

B.     Back pay, including lost wages and benefits, plus interest;

C.     An award of liquidated damages as provided by the FMLA;

D.     Pre-judgment and post-judgment interest;

E.     Costs, attorneys' fees, expenses, and expert witness fees;

F.     Any other relief this Court deems to be due and proper under the circumstances.

## COUNT TWO-
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
### (Retaliation- 29 U.S.C. §2615(b))

17

89.     Campbell re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

90.     Campbell is an eligible employee who was entitled to leave due to her own serious health condition.

91.     Campbell was denied full benefits and rights under the FMLA, in that the defendants retaliated against her for taking leave provided for by the FMLA.

92.     The defendants violated Campbell's rights under the FMLA willfully and with malice or reckless indifference.

93.     Specifically, the defendants took adverse employment action that affected the terms, conditions, and privileges of Campbell's employment by impermissibly using her FMLA absence against her in calculating her performance rating as well as terminating her.

94.     As a result of the defendants' retaliation, which was an intentional and willful violation of the FMLA, Campbell has suffered and continues to suffer damage to her career and professional opportunities, emotional distress, inconvenience, humiliation, shame, mental anguish, loss of enjoyment of life, pecuniary losses, including lost wages, and non-pecuniary damages.

WHEREFORE, Campbell requests this Court to enter judgment in favor of Campbell and against the defendants for:

A.      An order reinstating Campbell to her former position, or in lieu of reinstatement, front pay;

B.      Back pay, including lost wages and benefits, plus interest;

C.      An award of liquidated damages as provided by the FMLA;

D.      Pre-judgment and post-judgment interest;

E.      Costs, attorneys' fees, expenses, and expert witness fees;

F.      Any other relief this Court deems to be due and proper under the circumstances.

## COUNT THREE-
## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (Age Discrimination-29 U.S.C. §626(b))

95.     Campbell re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

96.     Campbell is within the age group protected by the ADEA.

97.     Campbell was qualified for her position in that she had done satisfactory work throughout the time she was employed by defendants and their predecessors.

98.     Campbell was discriminated against because of age in admission to, any program established to provide apprenticeship or other training.

99.    Further, the defendants gave plaintiff a performance review based in their failure to train her based on her age.

100.    Campbell was terminated and her responsibilities were at subsumed by a much younger and less qualified female employee.

101.    The defendants fired Campbell because of her age.

102.    The defendants' stated reason for firing Campbell was mere pretext intended to cloak defendants' discriminatory motive.

103.    The defendants' failure to retain Campbell because of her age was willful.

104.    The defendants' willful behavior violated and continues to violate the ADEA.

105.    As a proximate cause of the illegal conduct of defendants, Campbell lost wages and benefits, so that she is entitled to an award of back pay, front pay, and benefits.

WHEREFORE, Campbell requests this Court to enter judgment in favor of Campbell and against the defendants for:

A.    Declaratory Judgment that the employment policies, practices, procedures, conditions, and customs of the KBRwyle defendants are violative of Campbell's rights as secured by the ADEA and that the KBRwyle defendants have willfully violated the ADEA.

B.    A Permanent Injunction enjoining the KBRwyle defendants, their agents, successors, employees, attorneys, and those acting in concert with the KBRwyle defendants from discriminating on the basis of age in the hiring, retention, promotion, and representation of its employees, including Campbell;

C.    An order reinstating Campbell to her former position, or in lieu of reinstatement, front pay;

D.    Back pay, including lost wages and benefits, plus interest;

E.    An award of liquidated damages as provided by the ADEA;

F.    Pre-judgment and post-judgment interest;

G.    Costs, attorneys' fees, expenses, and expert witness fees;

H.    Any other relief this Court deems to be due and proper under the circumstances.

## COUNT FOUR-
## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (Retaliation)

106.   Campbell re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

107.   Campbell took part in protected activity by filing a claim of age discrimination with the EEOC in September 2016.

108.   Defendants were fully aware of this claim and fired her two days after her notice of right to sue was released without any finding.

WHEREFORE, Campbell requests this Court to enter judgment in favor of Campbell and against the defendants for:

G.        An order reinstating Campbell to her former position, or in lieu of reinstatement, front pay;

H.        Back pay, including lost wages and benefits, plus interest;

I.         An award of liquidated damages as provided by the ADEA;

J.         Pre-judgment and post-judgment interest;

K.        Costs, attorneys' fees, expenses, and expert witness fees;

L.        Any other relief this Court deems to be due and proper under the circumstances.

## COUNT FIVE
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination-42 U.S.C. § 12102)

109.   Campbell re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

110.   Campbell is a qualified individual with a disability for purposes of the ADA.

111.   The defendant discriminated against Campbell with respect to training opportunities due to her disability.

112.    The defendant failed to attempt to meet her reasonable accommodation in good faith and instead created a pretext for an undue hardship claim.

113.    The Defendant artificially narrowed Campbell's job duties, contrary to her physician-vetted reasonable accommodation request, the defendant also limited, segregated, and classified her in a way that adversely affected her opportunities or status because of her disability.

114.    The defendant illegally took Claimants medical absence for disability into account when creating her final performance review.

115.    The Defendants final performance review utilized standards and criteria that had the effect of discrimination on the basis of Campbell's disability.

116.    At all times relevant to this Complaint, the defendants were aware of Campbell's disability, yet did not make or permit the accommodations necessary because of Campbell's disability and did not provide Campbell with any reason why the defendants would not accommodate her.

117.    Campbell was subjected to a pattern of harassment and false allegations of poor performance and was ultimately fired because of her mental disability.

118.    The defendants' stated reason for Campbell's termination is a pretext to conceal the defendants' discriminatory motive.

119.   The defendants' harassment and failure to retain Campbell because of her physical disability was willful.

120.   The defendants' willful behavior violated and continues to violate the ADA.

121.   The defendants' discriminatory conduct injured Campbell.

WHEREFORE, Campbell requests this Court enter judgment in favor of Campbell and against defendants for:

A.      Declaratory judgment that the employment practices herein complained of are violative of Campbell's rights as secured by the ADA;

B.      A permanent injunction enjoining the KBRwyle defendants, its agents, successors, employees, attorneys, and those acting in concert with the KBRwyle defendants and at the KBRwyle defendants' request, from continuing to violate the ADA;

C.      An order requiring the KBRwyle defendants to reinstate Campbell to employment at KBRwyle, or reasonable front pay in lieu thereof;

D.      An award of back pay and employee benefits, plus interest;

E.      An award of compensatory damages;

F.      An award of punitive damages;

G.      Costs and reasonable attorney's fees to Campbell;

H.      Pre-judgment and post-judgment interest;

24

I.      Any other relief this Court deems to be due and proper under the circumstances.

## COUNT SIX-
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
### (Retaliation-42 U.S.C. § 12203(a))

122.    Campbell re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

123.    Campbell engaged in activity protected by the ADA in January 2017, when she complained to her supervisors that she was not being permitted to perform available work she was qualified for under her reasonable accommodation, forcing her into a less-valuable and thus more precarious position.

124.    Campbell further took part in protected activity when she filed an EEOC claim on ADA grounds in September 2016.

125.    Campbell experienced adverse job action in the form of termination immediately following issuance of her EEO right to sue letter.

126.    Campbell's protected activity under the ADA was a substantial or motivating factor in the defendants' adverse treatment of her.

127.    The reason given by defendants for Campbell's termination is a pretext to conceal the defendants' retaliatory motive.

128.    The defendants' retaliatory conduct injured Campbell.

WHEREFORE, Campbell requests this Court enter judgment in favor of Campbell and against defendants for:

A.    Declaratory judgment that the employment practices herein complained of are violative of Campbell's rights as secured by the ADA;

B.    A permanent injunction enjoining the KBRwyle defendants, their agents, successors, employees, attorneys, and those acting in concert with KBRwyle and at KBRwyle's request, from continuing to violate the ADA;

C.    An order requiring the KBRwyle defendants to reinstate Campbell to employment at KBRwyle, or reasonable front pay in lieu thereof;

D.    An award of back pay and employee benefits, plus interest;

E.    An award of compensatory damages;

F.    An award of punitive damages;

G.    Costs and reasonable attorney's fees awarded to Campbell;

H.    Pre-judgment and post-judgment interest;

I.    Any other relief this Court deems to be due and proper under the circumstances.

**PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

/s/ Nathaniel C. Abell
Nathaniel C. Abell
ASB-4537-L84L
Attorney for Plaintiff

**OF COUNSEL:**

Enzor & Maniscalco, LLP
P.O. Box 3603
506 Main Street
Oxford, Alabama 36203
Tel:   (256) 770-7232
Fax:   (256) 770-7234
Email: nathan@enzormaniscalco.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and will submit summonses forthwith in compliance with Rule 4 of the Federal Rules of Civil Procedure to send notification of such filing to the following:

KBRwyle, Technology Solutions, LLC
C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104.

Mr. Fredran Patton

c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104.